**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

J. Krist Schell

   v.                                                        Civil No. 06-cv-425-JM

Thomas W. Kent

**O R D E R**

This litigation arises out of a business venture that proved unsuccessful, involving plaintiff J. Krist Schell ("Schell") and defendant Thomas W. Kent ("Kent"). Schell asserts four counts in the complaint, but moves for partial summary judgment only on Count I, for breach of contract, and on Count III, for unjust enrichment (document no. 18). Count I includes two distinct breach of contract claims: one based on an Indemnification Agreement between the parties, another based on an alleged oral agreement between them. Count III seeks compensation for Schell's financial contributions to the company on a theory of unjust enrichment. Kent has filed a Cross Motion for Summary Judgment (document no. 26), contending plaintiff's contract and unjust enrichment claims are barred by the statute of limitations. Defendant also seeks a finding that the language of the Indemnity Agreement does not permit plaintiff to seek

contract damages or to obtain indemnification or contribution for the monies expended about which he now complains. For the reasons set forth below, both motions are granted in part and denied in part.

## Discussion

### 1. Facts[1]

In the fall of 1999, the parties created a company, Bradley Reed Lumber, LLC ("BRL"), to import and sell lumber from Russia. Defendant owned a two-thirds share and plaintiff owned a one-third share of BRL. Schell and Kent were both members of BRL and actively worked for it. They both made capital contributions to the company and incurred expenses on behalf of it. Although BRL was based in Bethlehem, New Hampshire, it was organized under the laws of Nevada.

---

[1] The facts are taken from Schell's "First Set of Requests for Admission," which were served on Kent but were not timely answered, and so are deemed admitted. See Pl.'s Statement of Material Facts ("SMF") (document no. 19), Attachment A (document no. 19-1) & Attachment D (document no. 19-4), ¶¶ 8 & 11, and Exhibit D-8; see also Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter."). Other facts, which are uncontested, are taken from the pleadings and from the SMF.

2

On February 4, 2000, a third party, Edward Myslik ("Myslik"), lent BRL $250,000 to buy inventory. The loan was evidenced by a note which was secured by a security interest in the lumber and by the personal guarantee of both Schell and Kent. See Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. (document no. 21), Ex. A (document no. 21-3). A few weeks later, on February 28, 2000, Schell and Kent entered into an Indemnity Agreement in which Kent, as indemnitor, undertook to indemnify Schell, as indemnitee, for two-thirds of any sums Schell had to pay on the personal guarantee to Myslik. See id. Ex. B (document no. 21-4). On August 1, 2000, the promissory note matured, but no payments were made to Myslik. See id., ¶ 21. Because of the financial instability of BRL, Myslik became involved with the business. See SMF, Att. C, Myslik Aff. (document no. 19-3), ¶ 4.

The next winter, on February 22, 2001, Kent called Schell to inform him that he could no longer be associated with BRL. See SMF, Att. B, Schell Aff., ¶ 10, & Att. D, Strock Aff. ¶¶ 8 & 11. Kent "got rid" of Schell so that he and Myslik could operate BRL. See SMF, Att. A, Pl.'s First Set of Requests for Admissions ("RFA") ¶ 20 (document no. 19-1). Schell agreed to end his BRL participation in return for payments of $18,587.00, for business-

related expenses, and $28,937.93, for lumber for BRL which he paid for personally. Id. at ¶¶ 9-10. Kent agreed to personally repay Schell this money, but did not specify a date by which the obligation would be paid. Id. at ¶¶ 9-10; SMF, ¶ 19. Schell was never paid any portion of the amounts due. Id. at ¶23; see also RFA, ¶¶ 25-26.

After Schell's February 2001 departure, Kent acted as the sole manager, officer and member of BRL. Id. at ¶27. Schell continued to hold a "Member's interest" in BRL, as that term is defined by Nevada law, Nev. Rev. Stat. ("NRS") § 86.091. See id. ¶ 22. Effective January 1, 2003, the Nevada Secretary of State revoked BRL's status as a limited liability company; however neither Schell nor Kent took any steps to dissolve BRL or wind up its business at that time. See Schell Aff. ¶ 15; Strock Aff. ¶ 2. Kent continued to operate the business, in various corporate forms, eventually partnering with Myslik in March 2003 in exchange for Myslik's release of Kent's obligations on the promissory note. See Def.'s Mem. in Opp'n, Ex. J (document no. 21-2). Myslik and Kent parted company in November 2003, and Kent finally closed the business on December 7, 2004. See id. ¶ 42; see also RFA ¶ 27; see also SMF, Att. C, Myslik Aff. (document

no. 19-3), ¶ 9. Schell did not receive the fair market value or any other compensation for his Member's interest in BRL. See RFA, ¶¶ 22 & 23 (applying terms as defined by NRS §§ 86.331 & 86.335).

In September 2004, Myslik filed a complaint against Schell, Kent and BRL, in Grafton County New Hampshire Superior Court, No. 04-C-167 (the "NH lawsuit"), seeking payment on the promissory note and the guaranty. See Schell Aff. ¶ 17, Att. B-6 (verified complaint). In November 2004, Myslik filed a similar lawsuit against Schell in Maine Superior Court, No. CV-04-691 (the "ME lawsuit"). See id. ¶ 18, Att. B-7 (complaint). The ME lawsuit was dismissed because of the choice of forum provision in the Guarantee. See Strock Aff., ¶ 4, Att. D-3. On June 8, 2005, Kent and Schell won a motion to dismiss the claims based on the Guarantee in the NH lawsuit, because the statute of limitations had run. See Def.'s Mem. in Opp'n, Ex. R (document no. 21-20). The court also found, however, that Kent and Schell were both personally liable on the promissory note, which was governed by the Uniform Commercial Code and subject to its six year statute of limitations. See id. (citing N.H. Rev. Stat. Ann. ("RSA") 382-1:3-118(a)). The NH lawsuit eventually was settled by both

parties, separately, in June 2006. See Def.'s Mem. in Opp'n, ¶ 49; see also Schell Aff., Ex. B-8 & B-9.

### 2. Standard of Review

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A material fact is one "that might affect the outcome of the suit." Id. at 248. In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmovant. See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment "bears the initial responsibility of . . . identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the burden

shifts to the nonmovant to "produce evidence on which a reasonable finder of fact, under the appropriate proofburden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citing Celotex, 477 U.S. at 323 and Anderson 477 U.S. at 249). Neither conclusory allegations, improbable inferences, nor unsupported speculation are sufficient to defeat summary judgment. See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st Cir. 2002); see also Price v. Canadian Airlines, 429 F. Supp. 2d 459, 461 (D.N.H. 2006).

"The role of summary judgment is to pierce the boilerplate of the pleadings and provide a means for prompt disposition of cases in which no trialworthy issue exists." Quinn v. City of Boston, 325 F.3d 18, 28 (1st Cir. 2003). On cross motions for summary judgment, as are presently before the court, the standard of review is applied to each motion separately. See Am. Home Assur. Co. v. AGM Marine Contrs., Inc., 467 F.3d 810, 812 (1st Cir. 2006); see also Mandel v. Boston Phoenix, Inc., 456 F.3d 198, 205 (1st Cir. 2006) ("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of

review.").

### 3. The claims

Plaintiff seeks summary judgment on Count I, in which he asserts two contract claims: (1) damages based on Kent's alleged breach of the Indemnification Agreement, for the costs associated with defending and settling Myslik's claims in the ME lawsuit and the NH lawsuit; and (2) damages for the alleged breach of the oral contract, in which Kent agreed to pay Schell for expenses of $18,587.00 and a capital contribution of $28,937.93 in return for Schell's agreement to end his active participation with BRL. Count II is a separate indemnification claim that is identical to the breach of contract claim based on the Indemnification Agreement set forth in (1) above and, therefore, shall be disposed of with my analysis of Count I. Count III is an unjust enrichment claim which seeks the same damages as (2) above on a quasi-contract basis, but also seeks compensation for the value of BRL that Kent received after terminating Schell's involvement with the company.[2]

---

[2] Count IV, alleging corporate fraud, is not before the court.

8

### (a) Counts I & II:  Indemnity Agreement Claims

The essential undisputed facts with respect to these claims are as follows:

1. The parties executed a $250,000 note to Edward Myslik as follows:
   "Bradley Reed Lumber Company, LLC
   by s/ Thomas Kent
   Thomas W. Kent, CEO and individually
   by s/ J. Krist Schell
   J. Krist Schell, President and individually."
   SMF, Att. B, Schell Aff.(document no. 19-2), Ex. B-3.

2. They also provided a Guarantee of BRL's obligation under the note to Myslik. Id., Ex. B-2.

3. Defendant, as indemnitor, provided the following indemnity to plaintiff of the Guarantee:

   1. INDEMNIFICATION
      **Indemnitor** hereby agrees to indemnify, defend and save and hold harmless **Indemnittee** from, against, for and in respect of two-thirds (2/3) of any and all damages, losses, obligations, liabilities, claims, lawsuits, deficiencies, costs and expenses incident to any suit, action, investigation, claim or proceeding, including, without limitation, interest, penalties, reasonable attorneys' fees and reasonable amounts paid in investigation, defense and/or settlement of any of the foregoing, suffered, sustained, incurred or required to be paid by **Indemnitee** by reason of, or in connection with, or arising out of **Indemnitee's** liability resulting from the **Guarantee** whether or not **Indemnitor** is a party to the underlying judgment, settlement, or other cause for **Indemnitee's** payment under the **Guarantee**, and

9

> whether or not **Indemnitor** is also liable or has paid any amounts under the **Guarantee**.
>
> Id., Ex. B-4, p. 1 (emphasis in original).

4. Myslik brought suit against plaintiff in the Cumberland County Superior Court in the State of Maine on the Guarantee, on November 12, 2004. Id., Ex. B-7.

5. The Maine Superior Court dismissed that suit based upon the parties' choice of forum provision. See SMF, Att. D., Strock Aff. (Document no. 19-4), Ex. D-3.

6. Defendant, by his failure to timely respond to Requests for Admissions is deemed to have admitted that the costs, fees and expenses in defending the ME lawsuit case are covered by the Indemnification Agreement. See RFA (Document no. 19-1), ¶ 18.

7. There is no evidence before the court of the amount of the costs, fees and expenses plaintiff incurred in connection with the ME lawsuit.

8. Myslik also sued plaintiff and defendant in New Hampshire on the Guarantee, for breach of contract because the promissory note was not paid, and for unjust enrichment, on September 24, 2004. See SMF, Att. B, Schell Aff., Ex. B-6.

9. Myslik later moved to amend his breach of contract claim in that suit to allege personal liability on the $250,000 promissory note. Def.'s Opp'n Mem., Kent Aff.,(document no. 21-1) Ex. R, pp. 3-4.

10. In deciding defendants' motion to dismiss and Myslik's motion to amend, the Grafton County Superior Court found that the signatures on the note did not show unambiguously that the parties signed in a representative capacity and, therefore,

under N.H. RSA 382-A:3-204(b), a holder in due course could hold them personally liable on the note.
Id., Ex. R, pp. 7-8.

11. In the same order of June 7, 2005, the court dismissed the breach of contract claim on the Guarantee.
Id., Ex. R, pp. 1, 5.

12. Again, defendant is deemed to have admitted that costs, fees and expenses defending the NH lawsuit prior to June 7, 2005, when the court first found that the claims based on the Guarantee were barred by the statute of limitations, are covered by the Indemnity Agreement.
RFA, (document no. 19-1), ¶16.

13. After the claim on the Guarantee was dismissed, plaintiff settled the NH lawsuit on June 5, 2006, and amended that settlement agreement on November 8, 2006, for a total payment of $29,000.
See Schell Aff., ¶ 19, Ex. B-8 & B-9.

14. The costs, fees and expenses in defending the NH lawsuit are not set forth for the court.[3]

---

[3] Schell states he incurred attorney's fees, costs and expenses of not less than $46,892.92 in defending himself in the NH and ME lawsuits. See Schell Aff., ¶20 (document no. 19-2). Schell also asserts, in his argument in support of his motion for summary judgment, that he incurred $75,892.92 in costs, fees and expenses in defending the two actions and that, pursuant to the Indemnification Agreement, he is entitled to reimbursement of two-thirds of that amount, or $50,594.77. See Mot. for Summ. J. (Document no. 18), pp. 7-10. Schell has not shown that these figures represent only the costs, fees and expenses referenced above in ¶¶ 6 & 12 here. To the contrary, Schell specifically attributes $29,000 of the claimed $75,892.92 to settling the NH lawsuit with Myslik. See id. at 10, 16; see also Compl. ¶ 24. The record demonstrates that the Schell-Myslik settlement stemmed from Schell's individual liability on the promissory note, not on the Guarantee, because the court had previously found that any

11

Kent's arguments that the language of the Indemnity Agreement does not cover the costs and fees of defending the Guarantee claims in Maine and New Hampshire need not be considered. The failure to timely respond to Plaintiff's First Set of Requests for Admissions requires, as a matter of law, a contrary finding. See Fed. R. Civ. P. 36(a)(3) (deeming the request admitted if no answer, objection or request for extension of time is filed within 30 days of being served). Plaintiff is granted judgment on the indemnity claims set forth in Counts I and II. The amount of the judgment remains to be determined.

(b)  Count I:  Oral Contract Claims

Defendant's failure to timely respond to Requests for Admissions 6-10 establishes that an oral contract was formed in which Kent agreed to pay Schell $18,587 for his expenses and $28,937.93 for his capital contribution to BRL in exchange for Schell's departure from BRL. There are no genuine issues of material fact that the agreement was made and that it was made on February 22, 2001. As Kent points out in his cross motion for summary judgment, the claims on this breach (taking the agreement

---

claims on the Guarantee had expired. The Indemnification Agreement was limited to claims arising out of the Guarantee; therefore, Schell cannot obtain reimbursement from Kent for the costs of his settlement with Myslik.

and promise as true) are based upon a promise in 2001. This action was commenced in November 2006. Kent argues that the breach of contract claims are barred by the statute of limitations.

New Hampshire's statute of limitations on contract claims is three years. See N.H. RSA 508:4, I (1997). The statute would be tolled if defendant had acknowledged the debt by direct and unqualified admission of liability for the alleged debt. See A&B Lumber Co. v. Vrusho, 151 N.H. 754, 756, 871 A.2d 64, 66 (2005). Such an admission must be direct and unqualified, both to acknowledge the debt and to express a willingness to pay it. Id. (citing authority).

Schell argues that Kent continued to promise to repay the debt, repeatedly asking for more time to enable BRL to become profitable. See e.g. SMF ¶ 27 (document no. 19); Schell Aff. ¶ 16 (document no. 19-2). These statements, however, are only generalized claims that Kent reassured Schell in the years that followed his February 2001 departure. See id. In an answer to an interrogatory, Schell states specifically that the last alleged reaffirmation of the debt was "at the end of 2002 or early 2003. . .. " Document no. 38, Ex. C, p. 4. By Schell's

13

own admission, the last date on which Kent directly acknowledged the debt owed was January 2003. That is more than three years before the complaint was filed, on November 16, 2006. Although defendant denies ever agreeing to personally pay the $18,587 or the $29,937.93, accepting plaintiff's allegation as true, as I must because of defendant's untimely admissions, any claim on the oral contract to these sums had is barred by the statute of limitations. There simply was no "direct and unqualified" reaffirmation of these alleged debts within the three years prior to suit. See <u>A&B Lumber Co.</u>, 151 N.H. at 765, 871 A.2d at 66; <u>see also</u> <u>Larson v. Barry</u>, 93 N.H. 31, 32, 35 A.2d 400, 401 (1943). Defendant's motion for partial summary judgment (document no. 26) is granted as to these claims.

### (c) Count III:  Unjust Enrichment Claims

In Count III, plaintiff reasserts his claim for the expenses and capital contribution he made on behalf of BRL, totaling $47,524.93, on a theory of unjust enrichment. Plaintiff also seeks damages for his proportionate share of the amount BRL was enriched by those same financial contributions. It is unclear whether Schell contends that the value of the unjust enrichment is the $47,524.93, or whether he is entitled to some percentage

14

of BRL's net worth, either based on his financial contribution or based on his original one-third ownership interest in the company. Schell argues Kent was unjustly enriched because he took Schell's economic interest in BRL. Schell argues that he continued to be a member of BRL, despite ending his role as a manager of the company in February 2001, because Kent failed to follow Nevada law to wind up BRL's operations. Schell's "member interest" in BRL was "his share of the economic interests in [it], including profits, losses and distributions of assets." See Mot. for Summ. J., p. 13 and fn 9 (citing NRS § 86.091). Schell asserts that Kent dissipated BRL's assets, selling them off for his own benefit without paying out Schell's member interest.

This claim is also barred by New Hampshire's three year statute of limitations. See Singer Asset Fin. Co. v. Wyner, 156 N.H. 468, ___, 937 A.2d 303, 213 (2007) (citing N.H. RSA 508:4, I). To the extent Count III seeks damages based on the unjust enrichment Kent received from not repaying Schell's expenses and capital contributions, that claim is based on the same facts and barred for the same reasons as the oral contract claims asserted in Count I and disposed of above. See Coyle v. Battles, 147 N.H.

98, 102, 782 A.2d 902, 906 (2001). To the extent Count III seeks damages for Schell's economic interest in BRL that may have been distinct from his financial contribution to it, that claim arose when BRL's authority to do business was revoked by the Nevada Secretary of State effective January 1, 2003. "'[A] cause of action arises once all the necessary elements are present. . ..'" Id. at 101, 782 A.2d at 905 (quoting Bronstein v. GZA GeoEnvironmental, 140 N.H. 253, 255, 665 A.2d 369 (1995)). By Schell's own admission, the revocation of BRL's charter and its right to conduct business triggered several statutory procedures to distribute assets and dissolve the company. See Mot. for Summ. J. at 14 (citing NRS §§ 86.274 & 86.521). Schell admits neither he nor Kent did anything to wind up BRL's business after the January 2003 charter revocation. Schell could have enforced the statutory protections available to him. Schell also could have brought an action against Kent, based on Kent's failure to follow those same provisions which Schell now contends unjustly enriched Kent, at any time during the three years following the revocation of BRL's charter.

Schell's claim arose in January 2003, and there is nothing in the record that would have tolled the statute of limitations.

16

See Wood v. Greaves, 152 N.H. 228, 233, 876 A.2d 241, 245 (2005) ("[T]he discovery rule is not intended to toll the statute of limitations until the full extent of the plaintiff['s] injury has manifested itself. Rather, that the plaintiff[] could reasonably discern that [he] suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable.'" (quoting Furbush v. McKittrick, 149 N.H. 426, 431, 821 A.2d 1126 (2003))). Because Schell waited until November 2006 to commence this action, his claims for unjust enrichment are barred by New Hampshire's three year statute of limitations. See N.H. RSA 508:4, I. Defendant's motion for summary judgment on Count III, therefore, is granted.

## Conclusion

For the reasons set forth above, plaintiff's Motion for Summary Judgment (document no. 18) is granted with respect to the claims based on the Indemnity Agreement asserted in Counts I and II, but denied with respect to the contract and unjust enrichment claims asserted in Counts I and III. Defendant's Cross Motion for Summary Judgment (document no. 26) is granted with respect to the contract and unjust enrichment claims asserted in Count I and Count III, because they are barred by the statute of limitations.

Defendant's motion is otherwise denied.

Each party is granted partial summary judgment as set forth above. The amount of the judgment with respect to the indemnity claims, and the Count IV claims, remain to be determined.

**SO ORDERED.**

                                                 /s/ James R. Muirhead
                                                 James R. Muirhead
                                                 United States Magistrate Judge

Date: May 9, 2008

cc: Melinda J. Caterine, Esq.
     K. William Clauson, Esq.