UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

J. Krist Schell

    v.                                                           Civil No. 06-cv-425-JM
                                                                Opinion No. 08NH191P
Thomas W. Kent


**O R D E R**


Plaintiff and defendant both have moved for reconsideration of my May 9, 2008, order granting in part and denying in part cross motions for summary judgment ("Summary Judgment Order"). Each party claims the order was based on three different errors of fact or law which justify the reconsideration now sought. See United States District Court for the District of New Hampshire Local Rule ("LR") 7.2(e) (following Fed. R. Civ. P. 59(e) by requiring motions for reconsideration to demonstrate a manifest error of either fact or law). After carefully considering the arguments on both sides, for the reasons set forth below, plaintiff's motion (document no. 56) is granted in part and denied in part, and defendant's motion (document no. 58) is denied.

## Discussion

**1.  Standard of Review**

"The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 Charles Alan Wright, et al., Fed. Practice & Procedure § 2810.2 (2d ed. 1995)).  A motion for reconsideration is not available to revisit or reargue theories previously advanced and rejected. See id.  Instead, the movant must demonstrate either that evidence has been newly discovered that could not have been discovered previously, that some intervening change in the law has occurred, or that the court's decision was based on some "manifest error of law," rendering the motion necessary to prevent "manifest injustice."  Id.  The Rule 59(e) motion may not be used to relitigate old matters or to raise arguments or present evidence that could have been raised prior to the entry of judgment.  Id.; see also Laundrau–Romero v. Banco Popular de P.R., 212 F.3d 607, 612 (1st Cir. 2000) ("new legal arguments or evidence may not be presented via Rule 59(e)").

With this standard in mind, I turn to each of the parties' arguments.

**2. Defendant's Motion (document no. 58)**

I begin with defendant's motion, because it challenges the basis of my summary judgment analysis that found defendant's failure to timely respond to plaintiff's Requests for Admission deemed the assertions made therein undisputed and accepted as true.  See Summary Judgment Order at 12, 14.  Defendant now contends that this "essentially default[]" judgment against him was unfair, because the untimeliness of defendant's response was inadvertent and excusable.  The record does not substantiate this claim.  Instead, the record reflects that plaintiff's counsel inquired about defendant's failure to respond on August 3, 2007.  See Document no. 19-4, Aff. of David. A. Strock, Ex. D-6.  Though defense counsel promptly forwarded a copy of Defendant's Answers to Plaintiff's First Set of Interrogatories, see id., Ex. D-7, defense counsel did not provide Defendant's Response to Plaintiff's First Set of Requests for Admissions until August 31, 2007, explaining they "were lost in the file and not sent."  Id., Ex. D-8.

Once the error was recognized, defendant could and should have asked for leave to file his untimely responses, but did not.  See Fed. R. Civ. P. 6(b) (allowing the court to extend time for

excusable neglect); see also Fed. R. Civ. P. 36(a)(3) (allowing the court to order a "longer time for responding" to requests for admission). Defendant also could have moved to withdraw or amend the admissions, pursuant to Fed. R. Civ. P. 36(b). Defendant chose to do nothing until almost a year after the late admissions were filed, and only after the Summary Judgment Order was issued. That is simply too little, too late. Defendant cannot now claim a manifest error of fact or law was done by the court following the explicit provisions of the Federal Rules of Civil Procedure. See Rule 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); see also Brook Vill. N. Ass'n v. Gen. Elec. Co., 686 F.2d 66, 70-71 (1st Cir. 1982) (finding an admission under Rule 36(a)(3) is "conclusively established"); Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 577-78 (D.N.J. 2008) (granting summary judgment based on Rule 36(a)(3) admissions).

   Defendant's motion fails to satisfy the demanding standards of Rule 59(e). The motion cites only documents already in the record which, therefore, cannot be newly discovered evidence that

was not previously available.  The motion also does not cite a single legal authority and, therefore, does not rely on a recent change in the law that the court must now consider to avoid a manifest injustice.  The motion, instead, improperly attempts to relitigate the facts and issues previously considered, while neglecting to develop any argument to justify the relief sought. See Cao v. P.R., 525 F.3d 112, 115-16 (1st Cir. 2008) (citing authority to explain previously undeveloped arguments cannot be presented in a Rule 59(e) motion); see also Bourne v. Town of Madison, slip op. No. 05-cv-365-JD, 2007 WL 1796239, *2 (D.N.H. June 19, 2007) (citing Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) to disregard undeveloped arguments).  Accordingly, defendant's motion (document no. 58) is denied.

### 3. **Plaintiff's Motion (document no. 56)**

Plaintiff advances three arguments in support of his request for reconsideration.  The first two arguments are unpersuasive; the third, however, warrants the relief sought.

#### (a)  Scope of the Indemnification Agreement

Plaintiff first contends the Indemnification Agreement covers all of his damages related to the underlying state law

suits and is not limited to those related to the Guarantee, because defendant's untimely response to plaintiff Request for Admission ("RFA") number 17 conclusively establishes defendant's liability for those costs, fees and expenses.  RFA 17 stated:

> The costs, attorney's fees, and expenses incurred by J. Krist Schell in defending against Edward Myslik's claims in <u>Edward H. Myslik v. Bradley Reed Lumber Company, LLC, et al.</u>, Grafton County Superior Court (Docket No. 04-C-167) are covered by the indemnification provisions of the Indemnification Agreement, dated February 28, 2000.

Document no. 19-1, ¶ 17.  In support of his position, plaintiff cites <u>Sigmund v. Starwood Urban Retail VI, LLC.</u>, 236 F.R.D. 43 (D.D.C. 2006).  Plaintiff also argues defendant's Answer to the Complaint did not respond to ¶ 22, which alleged that the "costs, attorney's fees, and expenses incurred by plaintiff in defending the New Hampshire and Maine Lawsuits are covered by the terms of the Indemnification Agreement."  Plaintiff claims that defendant's failure to answer that allegation deems it admitted as well, citing Fed. R. Civ. P. 8(d).  Plaintiff contends that these admissions "define – as a matter of law – the scope of the Indemnification Agreement," and that a narrower interpretation by the court constitutes a manifest error of fact and law.  Document no. 56 at 4.

I do not agree.  It is black letter law that the interpretation of a contract is a question of law for the court.  See Hill of Portsmouth Condo. Ass'n v. Parade Office, LLC, slip op. No. 04-cv-403-SM, 2006 WL 1644539, *6 (D.N.H. June 12, 2006) (citing authority); Found. for Seacoast Health v. HCA Health Servs. of N.H., __ N.H. __, 953 A.2d 420 (2008).  "In the absence of ambiguity, the parties' intent will be determined from the plain meaning of the language used.  The words and phrases used by the parties will be assigned their common meaning, and we will ascertain the intended purpose of the contract based upon the meaning that would be given it by a reasonable person."  Id. (quotation omitted).  The relevant language from the Indemnification Agreement was not disputed, and clearly provided that defendant would reimburse plaintiff for 2/3 of:

> any and all damages, losses, obligations,
> liabilities, claims, lawsuits, deficiencies,
> costs and expenses . . . by reason of, or in
> connection with, or arising out of [plaintiff's]
> liability resulting from the Guarantee . . .
> or other cause for [plaintiff's] payment under
> the Guarantee.

Compl. ¶ 16; see also Document no. 19-1, Pl.'s RFA, Ex. A (Feb. 28, 2000 Indem. Agt.).  This provision unequivocally limited coverage to damages sustained by plaintiff in connection with his

obligations stemming from the Guarantee, nothing further.

In his motion for reconsideration, plaintiff attempts to relitigate the scope of the Indemnification Agreement, without demonstrating how Sigmund or Rule 8(d) represent a change in the law that I must now consider to prevent some manifest injustice. Sigmund discusses why questions similar to those allowed under Rule 36(a) should also be allowed in a deposition under Rule 30(b), and determined that the plaintiff could inquire about defendant's understanding of the contract's divvying up of responsibilities.  See id., 236 F.R.D. at 46-47.[1]  Plaintiff seems to rely on Sigmund for the proposition that Rule 36(a) allows RFA 17 to define the scope of the Indemnification Agreement and to trump my construction of that contract, set forth in the Summary Judgment Order.  Neither Sigmund nor the cases on which it relies, however, support a reading of Rule 36(a) to change well-settled principles of contract construction by allowing the parties, rather than the court, to interpret the meaning of an unambiguous contract.

---

[1]The Sigmund court explained that for the same reasons questions about defendant's understanding of "who was responsible for repairing and maintaining the parking garage door under its management contract" would be appropriate as a Request for Admission under Rule 36(a), those questions could be asked in a deposition under Rule 30(b).  See id. at 46.

While Rule 36(a) allows mixed questions of law and fact, to discover "any matters within the scope of Rule 26(b)," those admissions include only opinions or conclusions reasonably drawn from facts.  See 8A Wright & Miller, Fed. Practice & Procedure, § 2255 (2d ed. 1994).  The rule anticipates questions such as whether a contract exists, or whether an employee acted within the scope of his employment, or whether a property was under the control of one of the defendants, and may even ask what was intended to clarify ambiguous terms in a contract.  See id.; see also Booth Oil Site Admin. Group v. Safety-Kleen Corp., 194 F.R.D. 76, 80 (W.D.N.Y. 2000); cf. Disability Rights Council v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.D.C. 2006).  It does not, however, allow a request for an admission of a pure matter of law.  See 8A Wright & Miller, Fed. Practice & Procedure § 2255; see also Booth Oil Site Admin. Group, 194 F.R.D. at 79 (citing 4A Moore's Fed. Practice, ¶ 36.04 (2) & (4) (2d ed. 1982)).  When a contract is unambiguous, like the Indemnity Agreement at issue here, parole evidence, either through Rule 36(a) or otherwise, regarding what the parties intended simply is not considered.  Cf. id. at 80 (allowing Rule 36 admissions for extrinsic evidence to interpret a contract because the contract language was not

clear).

Similarly, Federal Rule of Civil Procedure 8(d) provides no basis to reevaluate my prior decision.  Rule 8(d) describes how allegations should be stated; it does not provide that an unanswered allegation is deemed admitted.[2]  The rule is lenient and inclusive, allowing alternative statements and providing "the pleading is sufficient if any one of them is sufficient."  Fed. R. Civ. P. 8(d)(2).  I was aware of the Federal Rules of Civil Procedure when I issued the Summary Judgment Order.  They provide no support for the pending Rule 59(e) motion.

Here, the Indemnification Agreement was clear and its references to the Guarantee were unambiguous.  There was no need for any extrinsic evidence to determine the scope of the

---

[2] Perhaps plaintiff intended to cite Fed. R. Civ. P. 8(b), which addresses "Defenses; Admissions and Denials," and which provides that an allegation is admitted if it is not denied in a responsive pleading.  See Fed. R. Civ. P. 8(b)(6).  Yet, the rules also provide that a party can generally deny all the allegations, Rule 8(b)(3), and that the "pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Based on plaintiff's own allegations, plaintiff knew that defendant did not intend to reimburse all his business-related expenses.  See Compl., ¶ 13.  Defendant also denied any liability on the Guarantee and answered that the Indemnification Agreement was irrelevant.  See Ans., ¶¶ 16, 24 & 25.  Construing the pleadings "to do justice," defendant did not admit liability under the Indemnification Agreement for all of plaintiff's costs, fees and expenses in the underlying state law suits.

indemnification coverage.  Any admission regarding the contract's scope conveyed in RFA 17 or Defendant's Answer is irrelevant to my construction of what the Indemnification Agreement covered. Plaintiff's motion for reconsideration proffers no basis to reevaluate my analysis of his claims based on the Indemnification Agreement as decided in the Summary Judgment Order.

### (b) Breach of the Oral Agreement

Plaintiff's second argument for reconsideration asserts that I erroneously found that the statute of limitations had run on his claims based on an oral agreement he had with defendant for reimbursement of certain business expenses incurred on behalf of and capital contributions to the company.  In the Summary Judgment Order, I found that, again because of the untimeliness of defendant's responses to plaintiff's Requests for Admission, defendant had admitted an oral agreement was made in February 2001 pertaining to the repayment of that money, and that defendant had reaffirmed that obligation as late as January 2003. I concluded that any claims based on the January 2003 reaffirmation of that debt were barred after January 2006, based on New Hampshire's three year statute of limitations.  See N.H. Rev. Stat. Ann. 508:4, I (1997).  Plaintiff now contends that I

erred, because the oral agreement was not breached until defendant's 2007 denial of the debt, which first triggered the running of the statute of limitations.

In support of his argument, plaintiff relies heavily on Archdiocese of San Salvador v. FM Int'l, LLC, slip op. No. 05-cv-237-JD, 2006 WL 437493 (D.N.H. Feb. 23, 2006).  In that case, defendants breached their oral promise to repay plaintiff money within one month of plaintiff having made an investment with defendants.  Based on the agreement between the parties, the money should have been paid in April 2002.  In May 2002, one defendant acknowledged his liability for the debt and promised to repay it as soon as a bank guaranty was procured.  In July 2002, plaintiff realized the bank guaranty was counterfeit.  After several unsuccessful attempts to secure repayment of the money, plaintiff commenced suit in June 2005.  The court held that the statute of limitations had run on the original promise to pay in April 2005, because plaintiff was aware that defendants had breached their promise and that plaintiff would be harmed as a result of that breach as early as April 2002.  See id. at *4.  The statutory period was not tolled by the one defendant's reaffirmation of his liability for that debt in May 2002.  See

id. at *5. Instead, the court held that in May 2002 the one defendant had made a new promise, conditioning repayment of the debt on his receipt of a bank guaranty, which the original promise had not had. See id. ("[t]he admission [of liability] itself does not take the action out of the statue of limitations; rather, it is the new promise that may be inferred from that admission that removes the bar." (internal quotation omitted)). The court held that the breach occurred when the counterfeit bank guaranty was discovered and defendant's nonperformance first became clear, in July 2002, because the promise to repay had been conditioned on the receipt of the bank guaranty. See id. at 5. Plaintiff's claim, therefore, was not barred by the statute of limitations.

The critical issue in San Salvador, as it is here, is when was the promise to repay breached? Because the second promise, made in May 2002, was conditioned on an event the non-performance of which was not discovered until July 2002, that promise was not breached until July 2002; accordingly, the June 2005 claims based on that breach were not barred by the statute of limitations. Plaintiff argues here that defendant's promise to pay was not breached until 2007 when he first denied any liability based on

13

the February 2001 oral agreement.  That argument assumes defendant's promise to pay was open-ended and indefinitely enforceable into the future, which it could not be if it is understood to be an enforceable contract.  Such a promise would be illusory and not supported by any consideration.  Under those circumstances, there would be no contract.  But defendant's debt under the oral agreement was deemed to be admitted under Rule 36(a).

Plaintiff's claim accrued in February 2001, when he first knew that he was leaving the company without being compensated for his financial contributions to it, and when he first understood that defendant would reimburse him for those amounts:

> A claim accrues when all the events have occurred which fix the liability on the [defendant] and entitle the claimant to institute the action.  Claims for breach of contract generally accrue at the time of the breach.  A claim does not accrue, however, unless the claimant knew or should have known that the claim existed.  Alternatively, a claim accrues when damages are ascertainable.

Patton v. U.S., 64 Fed. Cl. 768, 774 (Fed. Cl. 2005) (internal quotations omitted).  The undisputed facts in the record, taken from plaintiff's own Requests for Admission, demonstrate that defendant's liability for the monies plaintiff had contributed to

the company was fixed when plaintiff left in February 2001, and was reaffirmed in January 2003.  Based on the record, at that time the amount of plaintiff's financial contribution was known and defendant had admitted his liability for it.  Plaintiff's claim was fixed, and defendant's promise to pay plaintiff was, based on the admission, not conditioned on any specified event or period of time.  Defendant's promise to pay was, therefore, immediately performable, and his failure to do so constituted a breach of that promise which triggered the statute of limitations.  See Archdiocese of San Salvador, 2006 WL 437493 at *5 n.9 ("Of course, the limitations period on the new promise will commence at the time of its making 'if the promise is immediately performable.'" (quoting 3 Eric Mills Holmes, Corbin on Contracts, § 9.10, at 280-81 (rev. ed. 1996)); see also 14 Am. Law Reports 4th 1385, § 1 (1982) (collecting cases that hold the statue of limitations begins to run on an oral promise to pay money which does not contain a time for repayment from the date the promise was made); Zecos v. Nicholas-Applegate Capital Mgmt., 42 Fed. Appx. 31, 32 (9th Cir. 2002) ("a cause of action for a breach of an oral contract accrues at the time of the breach, i.e., when the party charged with the duty to perform under the

contract fails to perform").

Plaintiff's motion for reconsideration has not demonstrated that my statute of limitations analysis was based on a clear error of fact or law. To find, as plaintiff would like me to do, that the February 2001 promise was indefinitely enforceable would require finding a contract based on an illusory promise not supported by consideration and, therefore, unenforceable.[3] Plaintiff's motion based on the oral contract is denied.

### (c)  Unjust Enrichment Claims

Plaintiff's last argument focuses on my finding that his claims based on unjust enrichment were barred by the statute of limitations. While the court is entitled to make findings on summary judgment sua sponte, see Sanchez v. Triple-S Mgmt. Corp., 492 F.3d 1, 7 (1st Cir. 2007), the party against whom summary judgment is entered must be provided with "appropriate notice and a chance to present its evidence on the essential elements of the claim or defense." Id. I did not provide plaintiff with that opportunity, and so will reverse my decision with respect to his

---

[3]Plaintiff has not identified any condition on which the promise to pay depended, other than the company needing to become profitable. That condition expresses a promise to pay that is too "equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences" to be enforceable. Soper v. Purdy, 144 N.H. 268, 270-71 (1999).

unjust enrichment claims.  The discovery process here was "sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts," see id., however, I did not afford plaintiff the requisite opportunity to respond to this defense.  See id. (requiring the district court to meet the discovery and notice conditions before entering summary judgment).  Accordingly, plaintiff's motion for reconsideration to reverse the entry of summary judgment in favor of defendant is granted.  Plaintiff is hereby notified, however, that I find the record supports a statute of limitations defense with respect to the unjust enrichment claims.

## Conclusion

For the reasons set forth above, the pending motions for reconsideration (document nos. 56 and 58) are denied in all respects, except that plaintiff's motion for reconsideration of the entry of summary judgment on its unjust enrichment claims asserted in Count III is reversed.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date:  October 15, 2008

cc: Melinda J. Caterine, Esq.
    K. William Clauson, Esq.